IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LINDA S. CRAIG,                   )
                                  )
            Plaintiff,            )
                                  )
       v.                         ) Civil Action No. 05-548
                                  )
JO ANNE B. BARNHART,              )
COMMISSIONER OF                   )
SOCIAL SECURITY,                  )
                                  )
            Defendant.            )

## MEMORANDUM JUDGMENT ORDER

AND NOW, this 25th day of September, 2006, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 17) be, and the same hereby is, denied.  The Commissioner's decision of July 22, 2003, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to sentence 4 of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to

such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed her applications for disability insurance benefits and supplemental security income on March 12, 2002, alleging a disability onset date of July 1, 1999, due to anxiety, anemia, degenerative disc disease, high blood pressure, head and body aches, insomnia, heart problems and chills. Plaintiff's applications were denied initially. At plaintiff's request, an ALJ held a hearing on May 20, 2003, at which plaintiff, represented by counsel, appeared and testified. On July 22, 2003, the ALJ issued a decision finding that plaintiff is

not disabled. On March 4, 2005, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on her alleged onset date and has acquired sufficient quarters of coverage to remain insured at least through the date of the decision. In addition, the ALJ determined that plaintiff is barred by res judicata from seeking benefits prior to July 28, 2001, based on a prior application that was denied by an ALJ on July 27, 2001, and for which the Appeals Council denied review and plaintiff did not appeal. The ALJ found no grounds for reopening or setting aside the prior adjudication and concluded that the finding of not disabled as of July 27, 2001, is final and binding.

Plaintiff was 47 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). Plaintiff has "more than a high school education". 20 C.F.R. §§404.1563 and 416.963. She has past relevant work experience as a medical assistant, but has not engaged in any substantial gainful activity since July 28, 2001.

After reviewing the medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of fibromyalgia and

degenerative disc disease, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed in Appendix 1 of the regulations.

The ALJ also found that, although plaintiff is unable to perform any of her past relevant work, she nevertheless retains the residual functional capacity to perform the exertional[1] requirements of the full range of sedentary work[2] not compromised by any non-exertional[3] limitations. Based on plaintiff's residual functional capacity, age, education and work experience, the ALJ applied 20 C.F.R., Appendix 2, Medical-Vocational Rule 201.21, which directs a finding of not disabled. Accordingly, the ALJ determined that plaintiff is not disabled under the Act.

---

[1] Exertional limitations are those that only affect a claimant's ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing and pulling). 20 C.F.R. §§404.1569a(b) and 404.969a(b).

[2] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying objects like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§404.1567(a) and 416.967(a).

[3] Non-exertional limitations are those that affect a claimant's ability to meet job demands other than strength demands Examples of non-exertional limitations include: difficulties functioning because of nervousness, anxiety or depression; difficulties in maintaining attention or concentration; difficulties in understanding or remembering detailed instructions; difficulties seeing or hearing; difficulties handling physical features of a work setting, such as dust or fumes; or, difficulties with manipulative or postural functions, such as reaching, handling, stooping, climbing, crawling, or crouching. 20 C.F.R. §§404.1569a(b) and 404.969a(b).

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(1)(B) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[4] See 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). Generally, if the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff challenges the ALJ's finding of not disabled at step 5 of the sequential evaluation process on numerous

---

[4] The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920. See also Newell, 347 F.3d at 545-46.

grounds: (1) the ALJ failed to properly analyze all of the medical evidence of record; (2) the ALJ misstated and mischaracterized the evidence; (3) the ALJ improperly found plaintiff "not totally credible"; (4) the ALJ erred in finding that plaintiff retains the residual functional capacity for the full range of sedentary work; and, (5) the ALJ's hypothetical to the vocational expert was not supported by medical evidence.[5]

After reviewing the ALJ's decision and the record, this court must conclude that the ALJ's residual functional capacity finding is not supported by substantial evidence.  Therefore, this case must be reversed and remanded for additional consideration of not only plaintiff's residual functional capacity, but also a re-evaluation of plaintiff's credibility.

At step 5 of the sequential evaluation process the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. §§404.1520(f) and 416.920(f).  Residual functional capacity is

---

[5] Plaintiff also argues in her brief that, to the extent the ALJ's decision was based on her purported failure to follow prescribed treatment, such failure is not a basis for finding her not disabled.  However, although the ALJ does note in the body of his decision that plaintiff has not followed the recommendation of some of her medical providers that she participate in an aerobic exercise program (R. 28), it appears that the ALJ did not use that as the basis for his disability finding.  On remand, if the ALJ determines that the failure to follow prescribed treatment is an issue, he must follow the procedures for evaluating the failure to follow prescribed treatment set forth in SSR 82-59 before he could find plaintiff not disabled on that basis.

defined as that which an individual still is able to do despite the limitations caused by his or her impairments. 20 C.F.R. §§404.1545(a) and 416.945(a); Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet certain demands of jobs, such as physical demands, mental demands, sensory requirements, and other functions. 20 C.F.R. §§404.1545(a) and 416.945(a). In doing so, the ALJ must consider all relevant evidence, including medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others and observations of the claimant's limitations by others. Fargnoli, 247 F.3d at 41; see also SSR 96-8p.

Residual functional capacity assesses "an individual's ability to do sustained work-related physical and mental abilities on a regular and continuing basis." SSR 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id. Accordingly, a residual functional capacity assessment must include a discussion of the individual's abilities to perform work on a regular and continuing basis. Id.

In this case, the ALJ concluded that plaintiff "has the residual functional capacity to perform the full range of sedentary work" and that her capacity for sedentary work "is substantially intact and has not been compromised by any nonexertional limitations." (R. 30). What is unclear from his

decision, however, is how the ALJ arrived at this determination.

In assessing plaintiff's residual functional capacity, the ALJ addressed and discounted the opinions of Dr. Yarboro (R. 435-440) and Dr. Landis (R. 446-47), both of whom submitted medical source statements that essentially limited plaintiff to the exertional requirements of sedentary work. (R. 26). However, immediately after discounting those opinions, the ALJ noted Dr. Hassan's diagnosis of fibromyalgia in March of 2003. Because the opinions of Dr. Yarboro and Dr. Landis were expressed prior to the diagnosis of fibromyalgia, the ALJ declared that "all opinions of the claimant's exertional capacity were reduced to reflect this new evidence." (R. 27).

The ALJ's decision is difficult to follow. He states that "all opinions of [plaintiff's] exertional capacity were reduced", but he does not indicate from what they were reduced. Moreover, immediately after discounting the opinions from Dr. Yarboro and Dr. Landis suggesting that plaintiff was limited to sedentary work, the ALJ "reduced" their opinions and concluded that plaintiff was limited to the full range of sedentary work, for all intents and purposes the exertional capacity assessments that he had just rejected.

In addition, the ALJ cites no evidence of record whatsoever supporting his finding that plaintiff retains the residual functional capacity for the <u>full range</u> of sedentary work. The assessments supporting a finding that plaintiff retains the residual functional capacity for sedentary work are those of Dr.

Yarboro and Dr. Landis, the assessments that the ALJ rejected, before "reducing" them. However, those assessments, if accepted, could also be read to suggest that plaintiff is limited to <u>less than</u> the full range of sedentary work.

Furthermore, the assessments from both Dr. Yarboro[6] and Dr. Landis[7] identify certain environmental restrictions arising from plaintiff's impairments constituting non-exertional limitations that, if accepted, would preclude the use of the grids to dictate a finding of not disabled as the ALJ did in this case.[8] It is not clear from the ALJ's decision why these environmental restrictions were not credited in assessing plaintiff's residual functional capacity. In fact, they were not addressed at all. Nevertheless,

---

[6] Dr. Yarboro opined that plaintiff should avoid heights, moving machinery, vibration, temperature extemes and wetness. (R. 436). In addition, Dr. Yarboro noted limitations in plaintiff's ability to reach and handle, postural movements which also constitute non-exertional impairments. 20 C.F.R. §§404.1569a(b) and 404.969a(b).

[7] Dr. Landis opined that plaintiff should avoid temperature extremes. (R. 447).

[8] The grids set out various combinations of age, education, work experience and residual functional capacity and direct a finding of disabled or nor disabled for each combination. See 20 C.F.R. Part 404, Subpart P, Appendix 2. When the four factors in a claimant's case correspond <u>exactly</u> with the four factors set forth in the grids, the ALJ must reach the result the grids reach. <u>Sykes v. Apfel</u>, 228 F.3d 259, 263 (3d Cir. 2000); 20 C.F.R. §404.1569; 20 C.F.R., Part 404, Subpart P, Appendix 2, §200.00. However, where the limitations imposed by a claimant's impairments and related symptoms affect the ability to meet both the strength demands and non-strength demands of jobs, a claimant is considered to have both exertional and non-exertional limitations, and the grids will not apply to direct a conclusion as to disability, but will be used solely as a framework to guide the disability decision. 20 C.F.R. §§404.1569a(d) and 416.969a(d).

at the hearing, the ALJ's hypothetical to the vocational expert in fact did include a limitation restricting the hypothetical individual from significant exposure to heat and cold. (R. 595).

On remand, the ALJ must clarify his residual functional capacity finding. He must reassess the opinions from Dr. Landis and Dr. Yarboro and adequately explain exactly what effect Dr. Hassan's diagnosis of fibromyalgia has on those opinions. He must also reconsider the residual functional capacity assessment of the state agency reviewer (R. 304-309) dated August 6, 2002, which he improperly gave little weight out of hand because it was not prepared by a medical expert. (R. 27). The regulations expressly provide that non-examining state agency reviewers are "highly qualified ... experts in Social Security disability evaluation." 20 C.F.R. §§404.1527(f)(2)(I) and 416.927(f)(2)(I). Accordingly, while not bound by findings made by state agency reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §§404.1527(f)(2)(ii) and 416.927(f)(2)(ii); SSR 96-6p.

On remand, the ALJ also is instructed to re-evaluate, under the standards set forth in 20 C.F.R. §§404.1529(c) and 416.929(c) and SSR 96-7p, plaintiff's subjective complaints of pain and other limitations in light of Dr. Hassan's diagnosis of fibromyalgia. If the ALJ concluded that Dr. Hassan's diagnosis was significant enough to "reduce" plaintiff's exertional capacity, he also must explain on remand whether that diagnosis lends any additional

credence to plaintiff's subjective complaints of pain and limitations, or, if he determines to the contrary, he must explain why it does not.

Finally, the ALJ must explain his residual functional capacity finding to the extent he determined that plaintiff has no non-exertional limitations. If he disagrees with the assessments of Dr. Landis and Dr. Yarboro, both of whom concluded plaintiff is restricted by non-exertional limitations, he must explain his basis for doing so. If, after reconsideration, he determines that plaintiff does have non-exertional limitations, he will not be permitted to rely on the grids to dictate a finding of not disabled, but may only use the grids as a framework to guide his disability determination. In that event, he must seek the advice of a vocational expert, or similar evidence, to aid in the determination of whether jobs exist in the national economy which someone of plaintiff's age, education, work background and residual functional capacity, properly assessed, can perform. See Sykes v. Apfel, 228 F.3d 259, 273 (3d Cir. 2000).

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Keith E. Bell, Esq.
    7 W. State Street, Suite 208
    Sharon, PA 16146

    Jessica Smolar
    Assistant U.S. Attorney
    U.S. Post Office & Courthouse
    700 Grant Street, Suite 4000
    Pittsburgh, PA 15219